The opinion of the court was delivered by
Manning, C. J.
The plaintiff claims from the defendant an indebtedness of twenty-five thousand one hundred and thirty-two 99-100 dollars for this, that he collected and received the amount of a series of warrants, which are set forth in detail, issued by the Auditor of Public Accounts, and which belonged to the plaintiff, and aggregate the sum sued for. Interest is also demanded from the dates of their collection.
Upon exception being made that the petition did not set forth any -cause of action, and being maintained with leave to amend, an amended petition was filed, alleging that the defendant failed to account to the plaintiff for the moneys collected and received by him, and had appropriated them to his own use. Exception was again made of the same nature as the first, and being overruled, the defendant answered.
After a general denial, he admits that he collected the warrants, but denies that they -were the property of the plaintiff, or that he collected them for the plaintiff’s account, but that they were his own, and were collected by him as owner — that the warrants were drawn in favour of David Young, then treasurer of the school board of Concordia, who was authorized by a resolution of that board to sell and transfer them, ■and that he did sell them to plaintiff for a valuable consideration in 1871, and afterwards made report thereof to the board, and paid to it or in its treasury, the sums received at and by that sale, and that such sums were used and applied by the board to the support of the public schools of that parish — that afterwards, in 1872, the board examined the accounts of Young, its treasurer, and settled with him, finding him chargeable with one thousand and ninety-seven 24-100 dollars as the balance in his hands.. This settlement is pleaded in bar of this suit. The defendant further avers that the plaintiff instituted suit in 1877 against Young, claiming *159 from him as treasurer’ $61,502.14, less $27,589.81 acc'dunted for, which first named, sum includes the warrants upon which plaintiff is now suing,. •and this demand of Young is now pleaded as an estoppel which precludes the plaintiff from contesting the validity of the transfer of the warrants. Finally the prescription of one year is pleaded.
The authorization to sell the warrants is contained in a resolution of the school board, certified as a correct copy by one Cornwall, treasurer of the board, and it’was objected to by the plaintiff on the ground that he was not the treasurer, or if he were, that he is not authorized to certify copies of the records of the board. The treasurer is also the secretary. The law makes the one officer perform the duties of the other. Sess. Acts 1871, p. 42. He had legal custody therefore of the records,. •and as it was his duty to keep the original, a copy certified by him as true was admissible in evidence. 1 Greenleaf’s Evidence $485. That he was treasurer, and therefore secretary, is expressly alleged by the ■plaintiff in its suit against Young, which is part of the documentary •evidence in the present suit.
But the plaintiff contends that it could not legally authorize the sale of the warrants by resolution or otherwise — that it had no right to, ’transfer any appropriations made for the support of the public schools, 'but only to receive and apply them — that school boards are not required nor expected to raise funds for the support of schools, their duty being to establish and maintain schools with funds furnished by the State, and if the State furnished no funds, there could be no schools. For, •argues the plaintiff’s counsel, if the board could sell the warrants for thirty cents on the dollar, it could sell them for one mill on the dollar •and thus could abolish and destroy the schools.
We held in Durant’s case, 29 Annual, 77, that the Free School Fund was inalienable, and had been placed hors de commerce by numerous ■congressional and legislative acts and constitutional provisions, and therefore that the bonds, composing that fund, could not be validly sold even under an authorization of the General Assembly, and we have re■cently re-affirmed what we then said. Sun Ins. Co. v. Board of Liq. not .yet reported. But these warrants do not enter into, or form a part of the capital of that fund. The interest of the School fund is the means of support of the schools. The boards of directors are expressly authorized to apply that interest to the maintenance of schools. It is, so to speak, the sole income of the schools, and is expected to be spent in their yearly maintenance. These warrants are drawn for that interest. The only way to get the interest out of the State treasury into the local • school treasury is to draw a warrant for it. Could the treasurer of the local board assign or transfer that warrant to some one near by the 'Treasurer’s office, who could conveniently get the money, such assign-. *160 ment being made for full face value ? Could lie sell that warrant to any one for one hundred cents in the dollar? If he could, the power to sell being conceded, he could sell for thirty cents in the dollar, or for fifty-seven cents, which was the price paid by the defendant. The execution of all human laws depend upon and must be confided to human instruments. They cannot foresee, nor provide for, all the contingencies of maladministration, of official dishonesty, or personal perfidy. When the law empowered the treasurer of the Concordia school board to draw the interest to which it was entitled from the State treasury, it surrounded the act with all the safeguards that mere enactments could do. It compelled him to give bond, and it entrusted to others the power to reject that bond for good cause. It could not foresee who would be the treasurer of each local school board, nor prevent the malversation of any of them. Some one had to be designated who should draw the warrant on the Auditor, and who was thus entitled to receive from that officer his warrant on the State Treasurer, and it was for each local board to guard the fund entrusted to it by selecting an officer of approved fidelity as its custodian, and requiring of him ample security for its preservation and disbursement.
What was the treasurer of the local board to do with these warrants? The plaintiffs counsel says, if they were not cashed at the treasury, shut up the schools. If the same rule were applied to the different departments of the State Government, there would be a total cessation of the exercise of all its functions. It is impossible for us to ignore the fact that warrants on the State treasury are not cashed. They form, and have formed for many years, a part of the commodities for daily sale in this city. The treasurer of the school board of Concordia must either have .sold, or the school treasury would have been empty. The legislature has more than once, not only recognized the fact that these particular warrants were the subject of barter, but made an enactment the special object of which was to enhance their market value. -All warrants were to be received in payment of arrear taxes, sess. acts 1871, p. 196, and free school warrants should be received in payment of current taxes. Sess. acts 1872, p, 55. Warrants had become so large a part of the State debt, and their sale or transfer had become so universal, that they were put on the same footing as bonds in the Funding Act. Sess. Acts 187á, p. 39.
To prevent misapprehension we may say that we are not treating-these warrants as negotiable paper in the commercial sense. It is their transferable quality — their alienability by sale and delivery — we are considering. Dillon, treating of municipal warrants, says; — Such instruments, issued by municipal and public corporations, are generally treated as negotiable in the sense of being transferable by delivery, and *161 in most of the States the transferee or holder may enforce payment by suit or by mandamus in his own name. Munic. Oorp. <S406. We have seen that the -transferability of State warrants has been recognized by the legislation of this State — that the transfer of them is of daily occurrence — that even as Dillon says municipal warrants are “ vouchers, or necessary instruments for carrying on the machinery of municipal administration, and for anticipating the collection of taxes,” so our State warrants have become the sole means or instruments for carrying on the machinery of every department of the State administration. The school warrants are like others in this respect. They cannot be regarded as stamped with the attributes of inalienability, as are the bonds of the school fund, for the latter are consecrated to a perpetual use, ‘ never to be diverted to any other purpose,’ while the former represent the produce of that sacred fund which is required to be annually spent in the ‘ maintenance and support of public schools.’
In 1877 the plaintiff brought suit against David Young and the sureties on his bonds as treasurer, and this suit is now pleaded as an estoppel. The allegations of that petition are that Young became treasurer of the Concordia school board in 1870 and continued therein until 1877, having executed four bonds with sureties during the intervening years, all of which are set forth — that during his term of office he drew from the State treasury over sixty thousand dollars of current, and free school fund, and that he paid out only a fraction over twenty-seven thousand dollars thereof — that Young has made divers sales-of his property (six being enumerated) with the view of eluding the payment of his defalcation, all of which are null, simulated, and in fraud of plaintiff’s rights which had been secured by timely recording of these several bonds — and thereupon judgment is prayed against Young for the residue of the fund in his hands, and against the securities for such sums as they were respectively bound for.
The sum alleged to have been received by him in that suit includes, the sum for which judgment is prayed against Hernandez in this suit. The allegations of the plaintiff in that suit affirm the collection by its. treasurer of the same warrants, for the collection of which the defendant is sued in this. The liability of Young, and the sureties on his official bonds, is founded upon his collection of the warrants and his failure to account for their proceeds. It is indisputable that Young, as treasurer, had the right to collect. This petition charges that he did collect, and such averment estops the plaintiff from now claiming that Hernandez collected, and is responsible therefor.
In what capacity did the defendant collect ? The present suit does not charge that he was the agent or mandatary of the plaintiff, nor was such the fact. He was neither its officer nor employee, nor did he *162 assume to transact its business, either by its authorization or of his own mere volition. He had no connection with the plaintiff. He treated with one of its officers and bought a saleable commodity from him, and the plaintiff had the misfortune to have an unworthy officer who consumed or withheld a large part of its funds. Which of the two should suffer ?
An interesting discussion was had at bar, and in the briefs, upon the nature or kind of obligation imposed upon, or assumed by the defendant in the act of collection of these warrants — whether the source of the obligation (admitting that there was one) arose from a contract, quasi-contract, offence or quasi-offence. This was necessary in the presentation of the case, in the event it should become necessary to determine in what length of time the present action should be prescribed. But it has become unnecessary for us to pursue the subject, since it is manifest from what we have already said that the plaintiff must fail in its action from other causes.
The judgment of the lower court is affirmed with costs.
Justice Spences recused himself, and took no part in the decision of this 'cause.
DeBlano, J.
I concur in the foregoing decree and rest my concurrence on the second ground discussed in the opinion read by the Chief Justice.
Rehearing refused.